UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

ANTONIO M. BROWN,          )
                               )
            Petitioner,      )
                               )
      vs.                    )      Case No. 1:17CV00174 SNLJ
                               )
UNITED STATES OF AMERICA,   )
                               )
          Respondent.     )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Antonio M. Brown, a person in federal custody. On April 20, 2016, Brown pled guilty to the offense of Interference with Commerce by Threat or Violence and Possession of Firearm in Furtherance of a Crime of Violence and, on May 24, 2017, this Court sentenced Brown to the Bureau of Prisons for a term of 120 months on Count 1 and Count 2 to run consecutively for an aggregate term of 240 months, a sentence within the sentencing guideline range. Brown's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## FACTS

**A. The Indictment:**

On September 17, 2015, a Grand Jury in the Eastern District of Missouri, Southeastern Division, returned a two-count Indictment against Antonio M. Brown. The Indictment charged that, on or about July 1, 2015, Brown, aided and abetted by Julius

Jones, committed the crimes of Interference With Commerce by Robbery in violation of Title 18, United States Code, Sections 1951 and 2 (Count I) and Possession of a Firearm in Furtherance of a Crime of Violence in violation of Title 18, United States Code, Sections 924(c)(1) and 2. On September 25, 2015, Brown was arrested and made his initial appearance on the federal charges. After the initial appearance, the Federal Public Defenders Office was appointed to represent Brown. Assistant Federal Public Defender Michael Skrien filed an entry of appearance on the same date, notifying the Court that he would be representing Brown. Brown was arraigned on September 29, 2015. At that arraignment, Brown pled not guilty to the charges.

**B. Pretrial Motions:**

On October 27, 2015, Brown's attorney submitted a Waiver of Filing Pretrial Motions. In that Waiver, Brown's attorney represented that his client did not wish to file pretrial motions. On November 5, 2015, Brown appeared before United States Magistrate Judge Abbie Crites-Leoni and formally waived his right to file pretrial motions and to have an evidentiary hearing regarding pretrial issues. Brown's case was initially set for jury trial or plea on November 19, 2015, but that trial/plea date was continued at various times at Brown's request. Eventually, the case was set for Brown's guilty plea on April 20, 2016.

**C. The Plea Agreement:**

The parties signed a written plea agreement that set out the terms and conditions of Brown's guilty plea to the charge. The government agreed that, in exchange for the Plea Agreement, the government would not bring any further charges against Brown related

to Brown's participation in the armed robbery of Curt's Grocery in Kennett, Missouri on

July 1, 2015, of which the government was aware of at the time. The parties also agreed:

> The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

(DCD 35, p. 2).

The Plea Agreement contained an agreed-upon Statement of Facts as to Brown's offense

conduct:

> On July 1, 2015, at around 10:03 p.m., two men wearing face masks entered Curt's Grocery Store in Kennett, Missouri. Curt's Grocery Store is convenience store that sells food and personal items that are supplied from a variety of suppliers that are located in states other than Missouri. Because Curt's Grocery Store receives a substantial amount of its inventory for resale from suppliers from other states, Curt's Grocery Store "affects commerce" as that term is used in Title 18, United States Code, Section 1951.
>
> The two men who entered the store displayed handguns and demanded that the clerk on duty, Lee Sawyer, give them the money from the store. Sawyer refused, and drew his own firearm. The three men began shooting at one another in the store. Sawyer was struck by several rounds fired by the two men and he fell to the floor. The men then took a money bag from behind the county, the cash from the cash register, the money from Sawyer's person, and two firearms from the store. The amount of cash taken during the robbery was approximately $11,000. That money was the property of Curt's Grocery Store. The men were observed by other people in the store getting into a silver Toyota passenger car. A call was placed to the Kennett police department by a witness who reported the robbery and a description of the getaway car.
>
> Kennett Police Officer Phillip Caldwell heard about the robbery on his vehicle radio while he was on patrol in Kennett. He started driving toward the store, but soon met a speeding silver Toyota vehicle. Caldwell turned his patrol vehicle around and gave chase. The Toyota fled at high speeds from Kennett to Blytheville, Arkansas. During the flight, two persons riding in the back seat of the Toyota fired handguns at the officer's car. Eventually, the Toyota crashed in Blytheville. The three men fled from

the scene of the crash. Antonio M. Brown was captured a short distance from the Toyota.

On July 7, 2015, Brown spoke to an Arkansas state police officer about the robbery. Brown stated that he, Julius Jones and Dontario Jones robbed Curt's Grocery Store. Brown said that he was the driver of the Toyota that evening and that Julius Jones and Dontario Jones went in the store with handguns to rob it. The three men had planned the robbery earlier that evening. Brown stated that Julius Jones and Dontario Jones shot at the officer pursuing them from Kennett.

Julius Jones and Dontario Jones were captured later. The stolen money was never recovered. Six firearms were found in or near the wrecked Toyota, including the two firearms stolen during the robbery. The robbery of Curt's Grocery Store occurred in the Eastern District of Missouri, in the Southeastern Division.

(DCD 35, pp. 3-4).

The parties agreed that the base offense level for Count I was 20 (pursuant to U.S.S.G. Section 2B3.1(a)), that six levels should be added because the victim sustained a life-threatening injury (pursuant to U.S.S.G. Section 2B3.1(b)(3)(C)) and that 2 levels should be added because the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer (pursuant to U.S.S.G. Section 3C1.2). The parties agreed that Brown would receive a reduction of three levels for acceptance of responsibility (pursuant to U.S.S.G. Section 3E1.1(a) and (b)), resulting in a Total Offense Level of 25 for Count I. (DCD 35, p. 5, 6) The parties agreed that there were no Guidelines offense levels applicable for Count II. (DCD 35, p. 5)

Brown and the government agreed to waive their rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea. Both parties retained their rights to appeal

all sentencing issues. (DCD 35, p. 7). Brown agreed to waive his right to file a petition pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel. (DCD, p. 8).

The written Plea Agreement contained the parties' acknowledgment that the maximum punishment for Count I, Interference With Commerce by Robbery, was a term of imprisonment of twenty years. The parties agreed that the maximum punishment for Count II, Possession of a Firearm in Furtherance of a Crime of Violence, was life, and that the term of imprisonment for this crime required a mandatory, minimum term of imprisonment of ten years, which must be served consecutively to the sentence for Count I and any other undischarged sentence of imprisonment that the defendant had been ordered to serve. (DCD 35, p. 5)

**D. The Change of Plea Hearing:**

On April 20, 2016, this Court conducted a plea hearing in this case in which Brown changed his plea to guilty. In that plea, Brown agreed that he was aware of the terms and conditions set out in his written Plea Agreement:

Court: The lawyers have given me this written guilty plea agreement consisting of 13 pages. I see that you and the lawyers have signed it on the last page; is that right?

Brown: Yes, sir.

Court: Have you read the agreement?

Brown: Yes, sir.

Court: Have you gone over it in detail with your lawyer?

Brown: Yes, sir.

Court: Has he explained the contents of the agreement in detail to you?

Brown: Yes, sir.

Court: And do you understand the contents of the agreement?

Brown: Yes, sir.

Court: Is there anything in here that you do not understand?

Brown: No. Actually, I understand it.

Court: Have any promises been made by anyone to get you to plead guilty - -

Brown: No, sir.

Court: - - other than the promises set out in this agreement?

Brown: No, sir.

Court: So this is the complete, full and total agreement; right?

Brown: Yes, sir.

Plea Tr. pp. 7, 8.

Brown agreed that he understood how the Sentencing Guidelines worked in his case:

Court: Has your lawyer explained to you the sentencing guidelines?

Brown: Yes, sir.

Court: So you'll understand after your plea I'll get with the probation officer, and we'll calculate the sentencing guidelines by using your criminal history - - that's your criminal record - - along with what we call the total offense level for these offenses. Those are the two factors that go into the calculation: Do you understand that?

Brown: Yes, sir.

Court: And your lawyer explained that to you as well?

Brown: Yes, sir.

Plea Tr. p. 9.

The Court then discussed that it was not bound by the Sentencing Guidelines, but was limited only by the statutory ranges of punishment. Brown admitted that he understood the Court's discretion and the statutory ranges of punishment:

Court: You need to understand, though, that the sentencing guidelines are simply guidelines. And by that I mean I can impose a sentence against you that's above the guidelines or a sentence that's below the guidelines: Do you understand that too?

Brown: Yes, sir.

Court: What I am bound by, though, is the statutory penalties for these offenses. That's the paragraph 5, bottom of page 4 and the top of page 6. So the first count, the robbery count, is up to 20 years in prison, a fine of up to $250,000 or a combination of imprisonment and fine. And after your release, there would be a period of supervised release of up to five years. Do you understand that on County I?

Brown: Yes, sir.

Court: Then on Count 2 - - that's the next paragraph - - possession of a firearm in furtherance of a crime of violence - - the penalty is imprisonment of up to life, a fine of up $250,000, or, again, a combination of imprisonment and fine. Now, if you're released, there would be a period of supervised release of up to five years. In addition, there's a mandatory minimum term of imprisonment of at least 10 years: Do you understand that?

Brown: Yes, sir.

Court: And then the term of imprisonment on Count 2 must be served consecutively to the term of imprisonment on Count 1: Do you understand that too?

Brown: Yes, sir.

Court: Consecutively and not concurrently.

Brown: Yes, sir.

Court: So the range of punishment then on Count 2 is a 10-year minimum to life

maximum, and whatever that turns out to be it has to be served consecutively to the term of imprisonment imposed in Count 1.

Brown: Yes, sir.

Court: You understand all that well then?

Brown: Yes, sir.

Court: And knowing that you still wish to plead guilty then?

Brown: Yes, sir.

Court: I'm going to consider the full range of punishment on both counts, and the sentence will be at my discretion: Do you understand that too?

Brown: Yes, sir.

Court: So with that in mind has anyone told you or promised you what sentence you'll receive in the case?

Brown: No, sir.

Plea Tr. pp. 10-13.

Brown admitted that the Statement of Facts was true and correct and agreed that he committed each and every element of both offenses. (Plea Tr. pp. 17, 18) A sentencing hearing was set for Brown for July 19, 2016. However, that sentencing date was continued several times at Brown's request.

**E. The Presentence Investigation Report:**

A Presentence Investigation Report ("PSR") was prepared by United States Probation Officer Bethany A. Wendling. That report recommended that Brown's Total Offense Level be set at 25. (DCD 69, p. 7) The PSR recommended the same offense level calculations as the parties agreed to in their written Plea Agreement. Brown's Criminal

History Category was found to be Category III. (DCD 69, p. 12) The applicable

Sentencing Guideline range for Count I (Interference with Commerce by Robbery) was

70 to 87 months. The applicable Guideline range for Count II (Possession of a Firearm in

Furtherance of a Crime of Violence) was 120 months, consecutive to any other term of

imprisonment. (DCD 69, p. 17) The PSR reported that the maximum possible punishment

for the crimes was imprisonment of up to 20 years for Count I and from ten years to life

for Count II. (DCD 69, p. 17)

**F. Sentencing Motions:**

On April 21, 2017, the government filed its Motion for Upward Variance and

Sentencing Memorandum. (DCD 57) The government requested a sentence of 120

months for each Count I and Count II, to be run consecutively for a total sentence of 240

months. The basis for the government's request was its position that Brown entered the

store before it was robbed by the Jones brothers and located the armed store manager.

Then Brown told the Jones brothers where the manager was located in the store. When

the Jones brothers entered the store, they immediately surrounded the manager and began

shooting their handguns at him, striking the manager four times. A second basis for the

government's request was Brown's past criminal history which involved convictions for

murder and another robbery.

Brown's attorney filed a Sentencing Memorandum on Brown's behalf in which he

asked for a downward departure from the applicable Guideline range Count I. (DCD 63)

His basis for that motion was Brown's attempt to cooperate with the Government, his

mental health problems and recurring heart issues.

Brown sent a letter to the Court asserting that the government had promised a reduction in his sentence for his cooperation against Julius and Dontario Jones, and that the government was wrongfully withholding that reduction. The government responded to that letter in its Sentencing Memorandum, detailing why it declined to accept Brown's offer of cooperation. The government decided, after speaking with Brown, that Brown was not truthful in his responses in several critical areas. The government filed the transcript of the Julius Jones trial with the Court to support its argument that Brown entered the store before the robbery to locate the armed store manager before the Jones brothers entered. Brown denied entered the store first, which created a substantial credibility problem if the government had called Brown as a witness in Julius Jones' trial, since other government witnesses clearly recalled Brown entering the store just before the robbery.

**G. The Sentencing Hearing:**

On May 24, 2017, this Court conducted Brown's sentencing hearing, after continuing that sentencing from an earlier date. At that earlier date, Brown testified that he did not enter the store before the robbery, nor did he inform the Jones brothers of the whereabouts of the store manager. The Court received and reviewed the trial transcript of the Julius Jones trial. (Sent. Tr. pp. 2, 3) Brown's attorney called government witness Tracey Hon to question her as to whether Brown entered the store before the robbery. Hon testified in detail that Brown (who she knew as "Tony") entered the store just before the robbery and bought a pack of Newport cigarettes and a bottle of "Remy" liquor. Hon testified that she knew Brown before the robbery.

(Sent. Tr. pp. 4-15)

Brown's attorney then called Lee Sawyer, the store manager that was shot. He testified that he was about to close the store when Brown walked up. Sawyer let Brown in the store to make his purchases. (Sent. Tr. pp. 16-28) During the trial of Julius Jones, both Hon and Sawyer testified that Brown entered the store before the robbery to buy cigarettes and the bottle of liquor.

After hearing that testimony, this Court made the following findings:

Court: All right. Having heard the testimony presented today, it is the Court's finding that the two victim witnesses were entirely credible. Defendant's testimony was not credible. And so the Court will adopt as its findings on this issue of cooperation or lack of cooperation the version of events as testified to by the two victim witnesses.

Sent. Tr. pp. 54, 55.

The Court then decided to disallow the reduction in offense levels for obstruction for Brown because Brown was untruthful in his testimony. That resulted in a Total Offense Level of 28 for Brown, with a new Guideline range of 97 to 121 months for Count I. (Sent. Tr. pp. 55, 56)

After argument from attorneys about their sentencing recommendations, the Court imposed its total sentence of 240 months by setting a sentence of 120 months for Count I, to be following by a consecutively served sentence of 120 months for Count II. That sentence was within the applicable Guideline range. (Sent. Tr. pp. 69, 70)

**H. The Appeal:**

Brown did not appeal his conviction or sentence.

**I. Petition for Post-Conviction Relief Pursuant to § 2255:**

On September 28, 2017, Brown filed a Motion to Vacate under Title 28 United States

Code § 2255, asserting that his attorney was ineffective for failing to ask the Court to

consider the effect of *Dean v. United States*, 137 S.Ct. 1170 (2017) on his sentence.

Brown asserted his counsel was ineffective for failing to mention the holding of *Dean*.

Brown does not state how this oversight affected his sentence, but merely assumes that it

did, since *Dean* wasn't mentioned in the sentencing proceedings.

## APPLICABLE LAW

**A. Need for Evidentiary Hearing and Burden of Proof:**

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the
> prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States

District Court states:

> The motion, together with all the files, records, transcripts, and correspondence
> relating to the judgment under attack, shall be examined promptly by the judge to
> whom it is assigned. If it plainly appears from the face of the motion and any
> annexed exhibits in the prior proceedings in the case that the movant is not entitled to
> relief in the district court, the judge shall make an order for its summary dismissal and
> cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of

establishing the need for an evidentiary hearing. In determining whether petitioner is

entitled to an evidentiary hearing the court must take many of petitioner's factual

averments as true, but the court need not give weight to conclusory allegations, self-

interest and characterizations, discredited inventions, or opprobrious epithets. *United

States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a

Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. *See also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

**B. Ineffective Assistance of Counsel:**

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at

694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The standard to be used in a collateral charge of ineffective assistance of counsel following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), which applies the holding of *Strickland* to instances involving guilty pleas. A

movant who pleads guilty upon advice from counsel may only contest the voluntary and intelligent character of the plea by establishing that the advice given was not within the range of professional competence required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56, citing *Tollett v. Henderson*, 411 U. S. at 267.

## DISCUSSION

Brown's sole argument in his original Petition is that his attorney was ineffective for failing to raise the holding of *Dean* to argue that this Court had the discretion to vary downward from the advisory Guideline range for the sentence for Count I and impose a reduced sentence. Because Brown does not demonstrate how that argument could have possibly affected his sentence, he fails to meet the *Strickland* standard for showing that his attorney was ineffective.

The holding of *Dean* involved a defendant sentenced for the federal crimes of conspiracy to commit robbery, two counts of robbery, one count of possession of a firearm by a felon and two counts of aiding and abetting the possession of a firearm in furtherance of a crime of violence. The issue in *Dean* arose at the sentencing hearing. Dean was facing a mandatory minimum sentence by statute of 30 years imprisonment for his convictions for the two charges of possession of a firearm in furtherance of a crime of violence (Title 18, U.S.C. § 924(c)). During the sentencing hearing, the district court judge stated that he believed that a sentence of 30 years plus one day would be sufficient. *Id*. at 1175. However, the district court judge also believed that he was required to assess the sentences to be imposed for the non-924(c) counts independently of the 924(c) sentence. The district court made that calculation and sentenced Dean to concurrent

15

sentences of 40 months on the non-924(c) counts, then sentenced Dean to a consecutive 30 year sentence on the two 924(c) counts, for a total of 400 months. *Id*.

Dean appealed, asserting that the district court had the discretion to consider the effects of all sentences and impose a total sentence that was reasonable. Dean argued that it was error for the district court judge to decline to consider the entire sentence to be imposed, including the mandatory minimum sentence, when deciding the appropriate sentence. The government argued that district courts should calculate the appropriate term of sentence for each individual count and disregard whatever sentences that the defendant faced on other counts. *Id*. at 1176. The government contended that Section 924(c) required this result by its statutory language. The Supreme Court agreed with Dean's argument, remanding the case back to district court for resentencing, finding that the district court had the discretion to impose a total sentence after considering the effect of the mandatory minimum term of imprisonment required by Section 924(c).

The Supreme Court held that a district court is not prohibited from considering the impact of the mandatory minimum sentence required under 18 U.S.C. § 924(c) in determining the appropriate sentence for the predicate offense. *See id*. at 1176 ("Nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count.").

Basically, the holding of *Dean* is to the effect that a district court may consider the entire sentence when determining the appropriate sentence for non-924(c) counts. The minimum sentence for the Section 924(c) counts are set by statute and do not require

discretionary judgments of the district court.

Brown does not state exactly how a *Dean* argument would have helped his sentence. He does not point to any part of the record that this Court did not understand its ability to impose a sentence from one day to twenty years for the robbery. In fact, during the plea colloquy, this Court told Brown that it was going to consider the entire range of punishment for the robbery count and the 924(c) count:

> Court: I'm going to consider the full range of punishment on both counts, and the sentence will be at my discretion. Do you understand that too?

> Brown: Yes, sir.

Plea Tr. p. 12, 13.

This court properly considered what a total sentence should be in this case. The government did not argue at Brown's sentencing hearing (as it did in the *Dean* case) that the Court was required to consider the sentence for the non-924(c) count before it decided the total sentence. This Court did in fact consider the effect of the total sentence when imposing the sentence on each count. Brown merely assumes that if his attorney had mentioned the *Dean* case, his sentence would have been affected. Brown also assumes, without any basis, that this Court misunderstood its discretion after the holding of *Dean*. Again, this Court properly considered the full range of punishment for both counts, and that includes the minimum term of imprisonment as well as the maximum. Brown's alleged error is completely unsupported by the record and he has not shown prejudice to him. Without a showing of either error or prejudice, Brown cannot succeed in this claim.

## SUPPLEMENTAL ISSUE

At the time that the government was preparing its response to Brown's Section 2255 petition, the government received a Motion to Supplement from Brown. In that motion, Brown alleges that his Hobbs Act robbery conviction was improperly classified as a crime of violence, citing the district court case of *Haynes v. United States*, 2017 WL 368408 (C.D. Illinois, January 25, 2017). Brown's assertion is that his underlying Hobbs Act robbery conviction is not a crime of violence, which is a necessary predicate for being convicted of a Section 924(c) charge. Of course, the holding of *Haynes* is not authority for this Court, given that the decision was a district court decision. Furthermore, the underlying premise of *Haynes*, that a Hobbs Act robbery conviction is not a crime of violence, has been rejected by the Eighth Circuit.

This issue arises because of the way that a Section 924(c) case is prosecuted. The relevant portion of Section 924(c) states:

> . . . any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Title 18, U.S.C. Section 924(c)(1)(A). (Emphasis furnished)

Therefore, in order for a defendant to be convicted of a Section 924(c) count, the government must prove that the defendant committed either a federal crime of violence or drug trafficking crime. In this case, the underlying "crime of violence" proven by the government was the Hobbs Act (Title 18, U.S.C. Section 1951) violation. Brown asserts that a Hobbs Act robbery is not a "crime of violence" as that term is defined by Section

924(c).

That statute defines a "crime of violence" as follows:

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and –
(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Title 18, U.S.C. Section 924(c)(D)(3).

The government has always contended that Brown's Hobbs Act robbery was a crime of violence under Subsection (A), in that his crime has, as an element, the use, attempted use, or threatened use of physical force against the person of another. Brown's written Plea Agreement listed the elements of his Hobbs Act offense:

One, aided and abetted by others, the defendant knowingly robbed Curt's Grocery in Kennett, Missouri;

Two, the robbery involved approximately $11,000 in cash;

Three, the $11,000 in cash was in the possession of Lee Sawyer, an employee of Curt's Grocery; and

Four, the defendant's actions affected commerce in some way or degree.

(DCD 35, p. 2)

The Hobbs Act statute sets out exactly what a "robbery" is:

(b) As used in this section –
(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession,

or the person or property of a relative or member of his family or of anyone
in his company at the time of the taking or obtaining.

Title 18, U.S.C. Section 1951(b).

As can readily be determined, the definition of robbery provides that the robbery

be accomplished by "means of actual or threatened force, or violence, or fear of injury."

The government would not have employed the remaining definition of a robbery if

Brown had tried his case, since this case involved an actual shooting of a victim during

the robbery itself. By any definition, Brown's Hobbs Act robbery was a "crime of

violence." And as will be shown later in this argument, this Circuit has come to the same

conclusion.

Brown's reliance on the holding of *Haynes* is misplaced, because (1) the decision is

from a circuit court in another circuit and is not authority for this Court; (2) the *Haynes*

decision that Brown cites was withdrawn by the district court judge; and (3) the Eighth

Circuit has come to a different conclusion and found that a Hobbs Act robbery is a crime

of violence.

The defendant in *Haynes* was convicted of three counts of Hobbs Act robberies in

violation of Title 18, U.S.C. Section 1951, three counts of interstate travel in aid of

racketeering in violation of Title 18, U.S.C. Section 1952, and six counts of using and

carrying a firearm in furtherance of a crime of violence under Title 18, U.S.C. Section

924(c). Haynes received six life sentences for the non-924(c) counts pursuant to the

"Three Strikes" provision of Title 18, U.S.C. Section 3559(c)(1). Those life sentences are

to be mandatorily imposed if the defendant has at least two prior convictions for "serious

violent felonies" as that term is defined in Section 3559. The district court found that Haynes had two prior residential burglary convictions, classified those as serious violent felonies and imposed the life sentences. *Haynes*, at * 4.

In 2015, the Supreme Court decided in *Johnson v. United States*, 135 S.Ct. 2551 (2015), that the residual clause definition of a violent felony in Title 18, U.S.C. Section 924(e) was unconstitutionally vague. Haynes filed a habeas petition, asserting that his life sentences imposed due to the residual clause definition of a "serious violent felony" and/or crime of violence was unconstitutionally vague, citing the holding of *Johnson*. The district court deciding Haynes' Section 2255 petition declared that the residual clause definition of a crime of violence under Section 924(c) was unconstitutionally overbroad and that those sentences could not be imposed.

As a side note, the decision reported above was vacated and replaced by the district court's decision in *Haynes v. United States*, 237 F.Supp.3d 816 (C.D. Illinois, February 2, 2017). In that decision, the district court set aside several of Haynes' sentences based on its belief that residual clause definitions of either serious violent felonies or Section 924(c) crimes of violence were unconstitutionally vague. The district court issued a certificate of appealibility, certifying that the Seventh Circuit should determine whether a Hobbs Act robbery was a crime of violence. The Seventh Circuit dismissed the appeal, holding that it had no jurisdiction until Haynes was fully resentenced. *Haynes v. United States*, 873 F.3d 954 (7th Cir. 2017). That sentencing has yet to occur and certainly, no appeal has been heard. There is no precedential value in any of the *Haynes* decisions due to the fact that his issues are not yet decided.

21

However, the Eighth Circuit has resolved this issue in *United States v. House*, 825 F.3d 381 (8th Cir. 2016). In that case, House made the same argument as is now raised by Brown, in that House claimed that his Hobbs Act conviction was not a crime of violence that would serve as a predicate conviction for Section 924(c) purposes. Rejecting that claim, the *House* Court noted that a Hobbs Act robbery has "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id*. at 387. The issue raised by Brown, whether a Hobbs Act robbery is a proper Section 924(c) predicate, has been decided in this Circuit. A Hobbs Act robbery conviction is decidedly a Section 924(c) predicate conviction as crime of violence.

Recently, the Eighth Circuit reaffirmed its position in House that a Hobbs Act robbery is a crime of violence and a proper Section 924(c) predicate offense in *Diaz v. United States*, 863 F.3d 781, 783 (8th Cir. 2017):

> Diaz argues that Hobbs Act Robbery does not qualify as a crime of violence under § 924(c)(3)(A). We reject that contention. Like other circuits, we have expressly held that "Hobbs Act robbery has 'as an element the use, attempted use, or threatened use of physical force against the person of another,' " the operative term in § 924(c)(3)(A). *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016) (citation omitted), cert. denied, *784 —— U.S. ——, 137 S.Ct. 1124, 197 L.Ed.2d 223 (2017). That decision is binding on our panel . . .

Diaz, 863 F.3d at 783.

Other circuits are in accord that a Hobbs Act robbery conviction is a proper Section 924(c) predicate conviction as a "use of force" crime of violence. *See United States v. Hill*, 832 F.3d 135, 140-44 (2nd Cir. 2016); *United States v. Robinson*, 844 F.3d 137 (3rd Cir. 2016); *United States v. Robinson*, 2017 WL 4162299 (6th Cir. September 20, 2017); *United States v. Howard*, 650 Fed.Appx. 466, 468 (9th Cir. 2016); *In re Fleur*, 824 F.3d

1337, 1340 (11th Cir. 2016). The overwhelming consensus from other circuits, and the Eighth Circuit, is that a Hobbs Act robbery conviction is a crime of violence and a Section 924(c) predicate.

Interestingly, the case that Brown cites, *Haynes* arises from a Seventh Circuit district court from the Central District of Illinois. Since *Haynes* was decided, the Seventh Circuit has had an opportunity to address this issue in *United States v. Allen*, 702 Fed.Appx. 457 (7th Cir. 2017). Noting a previous decision of that Court, the *Allen* Court stated:

> After Allen filed his opening brief, this circuit "join[ed] the unbroken consensus of other circuits" and concluded that a Hobbs Act robbery is a crime of violence under the elements clause of § 924(c). *United States v. Anglin*, 846 F.3d 954, 965 (7th Cir. 2017), petition for cert. filed (May 31, 2017) (No. 16-9411). We elaborated on that holding in *United States v. Rivera*, 847 F.3d 847, 848–49 (7th Cir. 2017), cert. denied, ─── U.S. ───, 137 S.Ct. 2228, 198 L.Ed.2d 669 (2017), noting that "one cannot commit Hobbs Act robbery without using or threatening physical force."

*Allen*, 702 Fed. Appx. at 459.

Even the Circuit that Brown cites from has disagreed with Brown's central argument. To paraphrase that Court, Brown could not commit a Hobbs Act robbery without using or threatening physical force. His Hobbs Act robbery was a crime of violence under the use of force definition of that term.

## CONCLUSION

For the foregoing reasons, the § 2255 Petition is dismissed.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Brown has not made a substantial showing of the denial of a federal constitutional right.

Dated this 10th day of April, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE